UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____ )<br>JANE DOE, )<br>        )<br>          Plaintiff, )<br>        )<br>    -against- )<br>        )<br>JONATHAN REES, AKA )<br>GREG ELLIS, AKA )<br>JONNY REES, )<br>        )<br>          Defendant. )<br>        )<br>        )<br>        )<br>_____ ) | 3:23 CV 1352 (TJM/ML)<br><br>**COMPLAINT** |

PLAINTIFF JANE DOE, individually, by and through attorneys LINDSAY

LIEBERMAN of LINDSAY LIEBERMAN LLC and ALLISON MAHONEY of ALM LAW,

LLC, brings this lawsuit against DEFENDANT JONATHAN REES, AKA GREG ELLIS, AKA

JONNY REES. In support of the Complaint, JANE DOE alleges the following:

<u>PRELIMINARY STATEMENT</u>

1.      Defendant is an actor who has appeared in dozens of movies, television shows,

and podcasts, and who has tens of thousands of followers on social media.

2.      Plaintiff had an on-again, off-again, intimate relationship with Defendant from

April 2016 until September 6, 2022, when Plaintiff informed Defendant that she was ending the

relationship, blocked him from continuing to call or text her, and stopped responding to all of his

attempts to contact her.

1

3.      Immediately after Plaintiff ended the relationship, Defendant began a campaign of threats, many written, designed to exert coercive control over Plaintiff.

4.      Defendant's campaign of extortion began with threats that he would harm himself if Plaintiff did not respond. That tactic by Defendant had worked in the past, because Plaintiff knew that Defendant had previously been institutionalized for a suicide attempt. This time, however, Plaintiff remained firm and did not respond.

5.      When Defendant's first tactic failed, he increased the pressure, by writing, "In light of your unwillingness to talk it out, I will soon be sharing my experiences with you – MY truths – with your family, friends and business associates." Plaintiff, however, remained firm and did not respond to the threats.

6.      When those tactics failed, Defendant increased the pressure further. On October 9, 2022, Defendant sent Plaintiff an email that included an explicit picture of Plaintiff, naked and engaged in masturbation, and threatened to publish that and other pictures and videos to a wide audience if she did not contact him. Defendant wrote, "I will post documents, photos, audio, video, on a special website dedicated all about you, and stop at nothing to best you." He continued, "unless you communicate with me it will get way worse." This worried Plaintiff, because Defendant had more than 65,000 social media followers at the time. Nonetheless, Plaintiff remained firm and did not respond.

7.      As he had threatened, Defendant continued to increase his campaign to terrorize Plaintiff. On October 9, 2022, Defendant wrote to Plaintiff's daughter, and – as he had threatened – exposed secret information about Plaintiff, including, for example, the untrue statements that she had been drugged and raped as a child by a close family friend, that she had committed various crimes, that she was a prostitute, and that she had cheated on Defendant during their

relationship. Defendant also made derogatory statements about Plaintiff's mental health and sexuality. Defendant implied he had secrets to disclose about Plaintiff's daughter, who was a new mother herself. Plaintiff's daughter blocked Defendant, and he escalated further.

8.      On October 11, 2022, Defendant sent an email to Plaintiff's business associate and friend, as he had threatened, which included a sexually explicit picture depicting Plaintiff naked and masturbating. In that email, Defendant wrote, "I have a team planning a podcast special and a website on [Plaintiff] – about her, her narcissism, and her escapades. Her diagnosed borderline personality disorder. It'll be embarrassing and humiliating for [Plaintiff]." He continued, "All she had/has to do is have one final conversation to resolve all this and she won't do that." The picture that Defendant sent was a sexually explicit, nude image, that showed Plaintiff masturbating, which Defendant had taken without Plaintiff's knowledge or consent. The image depicts Plaintiff's bare breasts and nipples and her pubic area. In Defendant's email to Plaintiff's client, he wrote that he would publish more sexually explicit images and videos of Plaintiff unless Plaintiff contacted him. Moreover, Plaintiff is not diagnosed with borderline personality disorder, so Defendant's statement was false.

9.      Plaintiff was granted a temporary restraining order in Superior Court of the State of California, County of Los Angeles on October 14, 2022. The temporary restraining order protected Plaintiff and Plaintiff's adult daughter, son in law, and grandson.

10.     On November 14, 2022, after Defendant testified in open court in the Superior Court of the State of California, County of Los Angeles and admitted to his attempt to use "revenge porn" to extort Plaintiff, the court issued a Domestic Violence Restraining Order After Hearing (the "DV ROAH"), protecting Plaintiff from Defendant.

11.     Even after the court entered the DV ROAH, Defendant continued to threaten Plaintiff. For example, on November 25, 2022, Defendant sought to intimidate a third-party witness from testifying against him. The next day, on November 26, 2022, Defendant posted on his social media page that he would reveal Plaintiff's name soon because she had come after him. Two days later, on November 28, 2022, Defendant filed a notice that he would be filing a motion seeking a new trial on the domestic violence restraining order.

12.     On February 3, 2023, the Superior Court of the State of California, County of Los Angeles, denied Defendant's motion for a new trial.

13.     As a result of Defendant's actions, Plaintiff fears for her safety and wellbeing and has suffered emotional, psychological, mental, and financial harm.

14.     Plaintiff brings this action seeking injunctive, declaratory, and monetary relief against Defendant for violations of federal privacy laws, 15 U.S.C. §6851; Defendant's disclosure of intimate images pursuant to New York's nonconsensual pornography statutes; intentional infliction of emotional distress; and defamation.

<u>PARTIES</u>

15.     Plaintiff Jane Doe is currently a resident of Santa Fe County, New Mexico.

16.     Plaintiff is a professional photographer, who relies on her reputation in connection with her business.

17.     Defendant Jonathan Rees, AKA Greg Ellis, AKA Jonny Rees is a resident of Chenango County, New York, and his last known address is 680 State Hwy 220, McDonough NY 13801.

18.     Defendant is an actor and author,[1] who has a large social media following, having more than 65,000 followers on Twitter, now known as, X, and 17,000 on Instagram. Defendant has stated in court that he believes himself to be a public figure.

19.     Defendant has a history of domestic violence restraining orders, including one, upon information and belief, that protected his ex-wife, and a current restraining order that protects Plaintiff.

## JURISDICTION AND VENUE

20.     This action is brought pursuant to 28 U.S.C. §1331, federal question, pursuant to 15 U.S.C. § 6851.

21.      This action is also brought pursuant to 28 U.S.C. § 1332(a)(1) based upon diversity of citizenship because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between a citizen of New York and a citizen of a different state.

22.     Venue in this district is appropriate pursuant to 28 U.S.C. § 1391 as Defendant resides in this district and venue is appropriate in any district in which a defendant resides.

## FACTUAL ALLEGATIONS

23.     Plaintiff and Defendant were in an intimate relationship from approximately April 2016 to September 6, 2022.

24.     On or about September 5, 2022, Defendant sent a desperate plea to Plaintiff to communicate with him after Plaintiff had attempted to end the relationship. Defendant insinuated that he had something crucial to share with her. Plaintiff agreed to speak with Defendant. On

---

[1] Defendant's published book, "The Respondent: Exposing the Cartel of Family Law" was published in 2021 after Defendant lost custody of his children and his ex-wife was granted an order of protection protecting her from him.

September 6, 2022, Plaintiff spoke with Defendant via a video call. During the call, Defendant berated Plaintiff and called her names such as "whore," "prostitute," and "slut."

25.     Plaintiff told Defendant that this would be the last time he would ever see her or hear from her. Plaintiff blocked Defendant on social media and texting platforms. Plaintiff has not spoken to Defendant since.

26.     On September 6, 2022, after Plaintiff blocked Defendant from contacting her via phone and text messages, Defendant emailed Plaintiff the following threat: "I hope that you will 'unblock' me so that if anything disastrous should happen in the future that you and I will be reachable." Plaintiff did not respond.

27.     On September 9, 2022, Defendant emailed Plaintiff and threatened that he would kill himself unless Plaintiff contacted him. Specifically he wrote, "In light of recent events and my being left with no ability to contact you via cellphone [sic] or text in case of an emergency, there are some series [sic] considerations I need to make in terms of my living trust, estate executors, possessions, and in particular, my end of life decisions…" Plaintiff knew that Defendant had previously attempted to commit suicide and had been hospitalized for mental health issues, so she understood the gravity of this threat. Despite her serious concern, and because she was afraid of Defendant, Plaintiff did not respond.

28.     On September 15, 2022, Defendant sent Plaintiff an email and attached a picture of a letter he claimed had been sent to his address in Culver City, California, and he asked where Plaintiff wanted it to be sent. This was an apparent effort to find out where Plaintiff was living. Plaintiff did not respond.

29.     On September 16, 2022, Defendant wrote via email, "My attempts to contact you to discuss your behavior have proved futile. I am still perplexed as to why you chose to commit

federal crimes, violate my privacy, and embark on a years long campaign to salvage my
reputation. In light of your unwillingness to talk it out, I will soon be sharing my experiences
with you - MY truths – with your family, friends, and business associates." Plaintiff did not
respond. Plaintiff understood this to be a sign that Defendant was acting on his threat to ruin
Plaintiff's reputation, relationship, and business prospects.

30.    On October 5, 2022, Defendant sent Plaintiff an email threatening to post explicit
sexual images and videos of Plaintiff, one of which he included in his email to Plaintiff. Also in
this email, Defendant threatened to post other private, intimate content about Plaintiff (some of
which Defendant invented), on the Internet unless Plaintiff communicated with him. Defendant
wrote, "I will post documents, photos, audio, video, on a special website dedicated all about you,
and stop at nothing to best you at what you set out to do to me – to ruin my reputation … So
keep going [Plaintiff First Name][Plaintiff Maiden Name] … keep avoiding and ignoring me …
And you will see who has more to lose … I am just getting started … Unless you communicate
with [sic] me it will get way worse …. It ends when you communicate."

31.    On October 9, 2022, Defendant emailed Plaintiff's daughter, at her work email
address, and falsely accused Plaintiff of committing a litany of crimes and engaging in sexual
infidelity, amongst other things. In this email, Defendant wrote, "I am determined that she
[Plaintiff] will not do this to anyone else in the future." The subject line of the email was "Your
Mother." Defendant wrote that he had evidence of Plaintiff committing crimes including "2-part
wire tapping Defendant (a federal offense she admitted to), illegally impersonating me to gain
access to my phone records (a CDR offense), multiple privacy protection act violations (state and
federal), false police reports," and that Plaintiff had "attacked [him] with a kitchen knife,"
"created false legal declarations" about his violent behavior. Defendant wrote, "Your mother is a

pathological liar with multiple personalities and an unstable temperament." Defendant threatened to reveal more details, writing that he was only providing Plaintiff's daughter with "the tip of the iceberg of what [he has] managed to discover about [Plaintiff's] deceptions." Plaintiff's daughter did not respond.

32.     On October 10, 2022, Plaintiff was contacted by a producer for one of Plaintiff's long-term clients. The producer told Plaintiff that Defendant had sent her a message that he had a "proposition" regarding Plaintiff.

33.     On October 11, 2022, Defendant sent an email to Plaintiff stating that Plaintiff is a "lying, cheating piece of absolute shit of a human being."

34.     On October 11, 2022, at 5:39 p.m.,  Defendant sent Plaintiff's client an email threatening to expose Plaintiff. In this email, Defendant referred to Plaintiff as a "first class lying cheating bitch" and wrote, "If she doesn't communicate with me … I'm going to share everything with everyone." Plaintiff did not contact Defendant. Plaintiff's client did not respond to Defendant.

35.     Within the hour, on October 11, 2022, at 6:19 p.m., as he had threatened, Defendant sent a photograph of Plaintiff's naked body, depicting her face, bare breasts and nipples, and pubic area, to at least one of Plaintiff's clients in an email. This image depicted Plaintiff masturbating. This photograph was taken without Plaintiff's knowledge or consent. Further, the image was taken when Plaintiff had a reasonable expectation of privacy in that it was taken during a private, intimate moment Plaintiff had shared with Defendant while on a Facetime call with only Defendant. Plaintiff was in her own home at the time. Plaintiff specifically told Defendant not to record, save, or share any of their intimate communication. (This was the same

photograph that Defendant had emailed to Plaintiff in his threat on October 5, 2022.) In the email

to Plaintiff's client, Defendant wrote,

> I have my team planning a podcast special and an [sic] website on [Plaintiff first name] [Plaintiff maiden name] – about her, her narcissism, and her escapades. Her diagnosed borderline personality disorder. It'll be embarrassing and humiliating for Plaintiff's first name …

> All she had/has to do is have one final conversation to resolve all this and she won't do that – and so I will remedy her reputation savaging and lies privately and publicly.

> If what she told you is true, how do I have photos and videos from March through August of her performing masturbation for me? (See screenshot!) …

> I will not stop until she allows us closure.

36.     On October 12, 2022, Defendant sent Whatsapp messages to Plaintiff's daughter

reiterating the false and harmful information he had sent to her via email on October 9, 2022.

Plaintiff's daughter did not respond. Defendant then messaged Plaintiff's daughter via Instagram

with similar harmful and false accusations against her mother. Plaintiff's daughter demanded

Defendant stop contacting her.

37.     Also on October 12, 2022, Defendant sent Plaintiff an email repeating his demand

to get "Final Closure." Plaintiff did not respond.

38.     Defendant's behavior was particularly frightening because Defendant is a

Hollywood actor and has a large social media following with the ability to destroy Plaintiff's

reputation and career.

39.     Defendant also had a concerning history of profiting off of his own acts of

domestic violence. Indeed, in 2015 a restraining order was issued against Defendant to protect

his former wife, who was the mother of his children. In 2021, Defendant published a book, "The

Respondent: Exposing the Cartel of Family Law," in which he criticized the family court that oversaw his ex-wife's domestic violence case against him. Defendant was featured on an episode of Dr. Drew's widely circulated podcast to discuss the book.

40.     On October 14, 2022, Plaintiff petitioned the Superior Court of California, County of Los Angeles, for a domestic violence restraining order and a temporary order was granted in Plaintiff's favor. The temporary restraining order also protected Plaintiff's adult daughter, son in law, and grandson.

41.     On October 31, 2022, after Defendant was informed that the temporary restraining order had been issued by the Superior Court of the State of California, Defendant filed a retaliatory petition for a domestic violence restraining order in Chenango County Family Court in New York.

42.     Among the false claims Defendant asserted against Plaintiff in his retaliatory filing was that she had allegedly wiretapped him. Attached to Defendant's declaration, signed under penalty of perjury in the State of New York and filed in support of his New York petition, was an email purportedly from Plaintiff, but which  Defendant had materially altered in a way that made it appear as if Plaintiff had admitted to watching Defendant through his Ring camera. Defendant, however, had forged the email, and his forgery was proven through computer forensics.

43.     On or about November 1, 2022, Defendant sent copies of the temporary restraining order he had been granted on fraudulent grounds to several of Plaintiff's friends and professional associates.

44.     On November 4, 2022, Defendant had Plaintiff served with his retaliatory New York restraining order petition.

45.     Also on November 4, 2022 – after Defendant had been served with the California temporary restraining order prohibiting him from all contact, direct or indirect, with Plaintiff's daughter and grandson – Defendant sent his associate from New York to the home of Plaintiff's daughter in Texas, to demonstrate that he would not be restrained. The associate went to Plaintiff's daughter's house while she was home alone with her new baby, and asked specifically for Plaintiff's daughter. Plaintiff's restraining order specifically prohibited Defendant from taking "any action to look for any person protected by this order, including their addresses or locations." Defendant's acts were a violation of Plaintiff's restraining order. The associate asked for Plaintiff's daughter by name, and handed her the retaliatory papers that Defendant had filed in New York, even though the daughter was not mentioned in those papers at all. The delivery, purporting to be service of process, was nothing more than another threat.

46.     Also on November 4, 2022, Defendant sent at least one of Plaintiff's professional associates an email falsely indicating that Plaintiff is a "very dangerous individual with 8 aliases … [and] She is facing multiple felonies in multiple states. **Please**, you be very careful." (emphasis in original). Defendant specifically instructed Plaintiff's professional associate to forward the email to another one of Plaintiff's professional associates with whom Plaintiff was working on a project at the time. Upon information and belief, Defendant knew that Plaintiff was engaged with this professional associate on a project at that time.

47.     Additionally, Defendant drafted a false press release about Plaintiff, which he began sending out on or about November 6, 2022. Defendant titled the press release, "Amber Heard's Copycat," and posted a photograph of Plaintiff's face next to a photograph of Amber Heard's face. The press release included lies such as, Plaintiff "Caught Wiretapping [Defendant]. Stalking And Recording [Defendant] at his LA Home For Six Months, Without

His Knowledge & Attacking Him With a Knife: Ordered To Be Restrained by New York Judge." Defendant fabricated a quoted response from Plaintiff in his press release that stated, *"I logged into your RING account. I continued watching and recording it for six months. Where I really messed up was to sit and watch it and share it with others."* Upon information and belief, Defendant sent this press release to his publicist, his producer, his manager, and approximately 20 other news media organizations, including the Daily Mail, Fox, and NBC.

48.     On November 14, 2022, both Plaintiff and Defendant testified at the Superior Court of the State of California, County of Los Angeles, for the trial on Plaintiff's petition for a domestic violence restraining order. During his testimony, Defendant admitted to sending the intimate visual depiction of Plaintiff, without her consent, for the purpose of pressuring her to speak with him. He testified, "It was for the sole purpose of us having a conversation . . . ."

49.     The Superior Court of the State of California found Plaintiff credible and issued a three-year domestic violence restraining order (the DV ROAH) in Plaintiff's protection that expires on November 14, 2025.

50.     In addition to the no-abuse, no-contact, and stay-away language, the DV ROAH specifically stated that "Respondent may not post or share any photo of Petitioner except upon receipt of a written release by Petitioner in advance."

51.     On February 3, 2023, Defendant's petition for a new trial was heard and denied by the California Superior Court.

52.     After Defendant's counsel was provided the forensic proof of his forged document supporting his petition for a restraining order, Defendant did not deny the forgery, and instead, through counsel, dismissed the retaliatory New York action against Plaintiff.

53.     Defendant continued to take acts to intentionally harm Plaintiff, even after the temporary restraining order protecting Plaintiff was issued on October 14, 2022 and after the DV

ROAH was issued on November 14, 2022, causing Plaintiff to suffer continued harm and distress. A few of Defendant's post-restraining order acts of harassment are as follows:

    a. Plaintiff is informed and believes that on or about November 1, 2022, Defendant filed a report with Transportation Security Administration ("TSA") falsely flagging Plaintiff as a potential danger who may be imminently boarding a plane and may have access to guns. Not coincidentally, on November 7, 2022, Defendant's associate, April Chandler, made an appearance on Defendant's behalf in the Superior Court of the State of California, and, during a break in the proceedings, told a private investigator and Plaintiff's attorney that Plaintiff was going to lose her precheck benefit. The TSA did not, however, take action against Plaintiff.

    b. On November 25, 2022, just before seeking a new trial in the California action, Defendant, through his associate, sought to intimidate a third-party witness who had previously provided crucial jurisdictional evidence against Defendant in the California action from testifying against him.

    c. On November 26, 2022, Defendant posted on his social media page that he would reveal Plaintiff's name soon because she had come after him.

    d. On or about November 1, 2022, Defendant contacted the IRS and filed a false and defamatory complaint against one of Plaintiff's companies, which led to the company being audited and Plaintiff having to pay her accountant to address the issue.

54.     Defendant's abuse, all of which was perpetrated on Plaintiff for her refusal to speak to Defendant, has caused Plaintiff to suffer financial, psychological, and emotional harm. Among other things, she has needed to increase her security, engage counsel and forensics experts, and otherwise live in a fear of Defendant and the repercussions of his actions.

### FIRST CAUSE OF ACTION
( 15 U.S.C. § 6851 - Civil Action Relating to Disclosure of Intimate Images)

55.     Plaintiff incorporates by reference all of the previous allegations in this Complaint as if fully set forth herein.

56.     On October 11, 2022, and potential on other dates and times, Defendant used an Internet connection, along with a cell phone, tablet, and/or computer, to transmit at least one intimate visual depiction of Plaintiff, naked and materbating, to at least one third-party by means or facility of interstate commerce.

57.     Defendant did not obtain Plaintiff's consent to disclose or transmit the image.

58.     Defendant sent the image with the specific intent to harm and coerce Plaintiff.

59.     Defendant sent the image knowing that Plaintiff would not have consented to Defendant sending that image to any third party.

60.     As a result of Defendant's actions, Plaintiff suffered personal injury, including emotional and psychological injuries, as well as other economic and non-economic damages.

61.     Plaintiff demands the greater of the actual damages she sustained or liquidated damages in the amount of $150,000 per image sent, and the cost of this action, including reasonable attorneys' fees and other litigation costs reasonably incurred pursuant to 15 U.S.C. § 6851(b)(3)(A)(i).

62.     Plaintiff is also entitled to equitable relief, including a permanent injunction

ordering Defendant to cease displaying and disseminating visual depictions of Plaintiff pursuant

to 15 U.S.C. § 6851(b)(3)(A)(ii).

**SECOND CAUSE OF ACTION**
(N.Y. C.L.S. Civ. R. §52-b - Private Right of Action for Unlawful Dissemination or
Publication of an Intimate Image)

63.      Plaintiff incorporates by reference all of the previous allegations in this

Complaint as if fully set forth herein.

64.     Defendant captured a still image of Plaintiff, without her consent, which depicted

Plaintiff's unclothed and exposed intimate parts, including, but not limited to, Plaintiff's bare

breasts, nipples, and pubic area.

65.     The image was taken when Plaintiff had a reasonable expectation of privacy and

after she had specifically told Defendant not take any photographs or videos of their intimate

interaction.

66.     Defendant disseminated and published the still image without Plaintiff's consent.

67.     Defendant disseminated and published the image for the purpose harassing,

annoying, and alarming Plaintiff.

68.     After disseminating and publishing the image without Plaintiff's consent, and

through at least November 26, 2022, Defendant continued to use his social media platform to

continue to threaten to publicly humiliate and expose Plaintiff.

69.     As a result of Defendant's actions, Plaintiff suffered personal injury, including

emotional and psychological injuries as well as other economic and non-economic damages.

**THIRD CAUSE OF ACTION**
(N.Y. C.L.S. Civ. R. §52-b - Private Right of Action for Unlawful Dissemination or
Publication of an Intimate Image)

70.    Plaintiff incorporates by reference all of the previous allegations in this Complaint as if fully set forth herein.

71.    Defendant captured a still image of Plaintiff, without her consent, which depicted Plaintiff's unclothed and exposed intimate parts, including, but not limited to, Plaintiff's bare breasts, nipples, and pubic area.

72.    The image was taken when Plaintiff had a reasonable expectation that any images captured would remain private.

73.    Defendant threatened to disseminate and/or publish the still image without Plaintiff's consent.

74.    Defendant threatened to disseminate and/or publish the image for the express purpose of coercing, harassing, annoying, and alarming Plaintiff.

75.    After threatening to disseminate and publish the image without Plaintiff's consent, and through at least November 26, 2022, Defendant continued to use his social media platform to continue to threaten to publicly humiliate and expose Plaintiff.

76.    As a result of Defendant's actions, Plaintiff suffered personal injury, including emotional, and psychological injuries as well as other economic and non-economic damages.

### FOURTH CAUSE OF ACTION
(Outrageous Conduct Causing Emotional Distress)

77.    Plaintiff incorporates by reference all of the previous allegations in this Complaint as if fully set forth herein.

78.    Defendant intentionally and for the purpose of causing severe emotional distress, recklessly conducted himself towards Plaintiff in a manner so shocking and outrageous that it exceeded all reasonable bounds of decency.

79.     Defendant's shocking and outrageous conduct went on for months, from approximately September 6, 2022 through at least until November 26, 2022.

80.     During this time, Defendant contacted Plaintiff and/or her friends, family, and associates, and posted about her in social media.

81.     Defendant's threats, extortion efforts, and abuse were marked by significant intensity. Defendant, for instance, falsely told people and various authorities that Plaintiff committed serious crimes, he stalked Plaintiff, and he berated and disparaged Plaintiff.

82.     Defendant has also captured a still image of Plaintiff's naked body without her knowledge or consent and disseminated the image to at least one third party without Plaintiff's consent.

83.     Additionally, Defendant has contacted Plaintiff's employees, clients, former employees, friends, family members, and daughter to spread false, harmful information about Plaintiff.

84.     Defendant's conduct was so extreme in degree and so outrageous in character that it exceeds all reasonable bounds of decency.

85.     As a result of Defendant's actions, Plaintiff suffered severe emotional distress and personal injury, including emotional, and psychological injuries as well as other economic and non-economic damages.

86.     Defendant acted with the desire to cause such distress and harm to Plaintiff.

## **FIFTH CAUSE OF ACTION**
(Defamation)

87.     Plaintiff incorporates by reference all of the previous allegations in this Complaint as if fully set forth herein.

88.     On November 4, 2022, Defendant drafted and sent an email to Plaintiff's

professional associate, which falsely stated, Plaintiff is "very dangerous individual with 8

aliases…[and] She is facing multiple felonies in multiple states. Please, you be very careful."

89.     This statement was defamatory in that it had a tendency to expose Plaintiff to

public hatred, contempt, ridicule, and/or disgrace.

90.     The statement referred to Plaintiff and was reasonably understood to be about

Plaintiff.

91.     Defendant published or broadcast the statement, communicating it to Plaintiff's

professional associate.

92.     Further, the statement tends to injure Plaintiff in her trade, business, or profession.

### SIXTH CAUSE OF ACTION
(Defamation)

93.      Plaintiff incorporates by reference all of the previous allegations in this

Complaint as if fully set forth herein.

94.     Defendant drafted a false press release about Plaintiff, which he began sending

out on or about November 6, 2022 and continued sending, upon information and belief, in the

following weeks.

95.     In the press release, Defendant wrote the title, "Amber Heard's Copycat," and he

posted a photograph of Plaintiff's face next to a photograph of Amber Heard's face.

96.     Defendant also wrote false statements in the press release, including, but not

limited to, Plaintiff "Caught Wiretapping [Defendant]. Stalking And Recording [Defendant] at

his LA Home For Six Months, Without His Knowledge & Attacking Him With a Knife: Ordered

To Be Restrained by New York Judge."

97.     Defendant further wrote a false quote and attributed the statement to Plaintiff, which stated, "I logged into your RING account. I continued watching and recording it for six months. Where I really messed up was to sit and watch it and share it with others."

98.     The statements in this press release were defamatory in that they had a tendency to expose Plaintiff to public hatred, contempt, ridicule, and/or disgrace.

99.     The statements referred to Plaintiff and were reasonably understood to be about Plaintiff.

100.     Indeed, Defendant included a photograph of Plaintiff and her name in the press release.

101.     Defendant published or broadcast the statement, communicating it to and sharing it with, upon information and belief, his publicist, his producer, his manager, and approximately 20 news media organizations, including the Daily Mail, Fox, and NBC.

102.     The statements in the press release charge Plaintiff with committing a serious crime and tend to injure Plaintiff in her trade, business, or profession.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant her the following relief:

A. Awarding Plaintiff the greater of her actual damages, or, in the alternative, liquidated damages in the amount of $150,000.00 per image, pursuant to 15 U.S.C. § 6851(b)(3)(i);

B.   Compensatory damages, including past and future economic damages and non-economic damages;

C.   Punitive damages, as allowed by law;

D.   Attorneys' fees, as allowed by law;

E.   All costs associated with this action, including, but not limited to, expert fees, deposition expenses, travel expenses, filing fees, and trial presentation expenses on all claims allowed by law;

F.   Pre-filing, pre-judgment, and post-judgement interest at the highest lawful rate; and

G.   Appropriate injunctive relief against Defendant pursuant to 15  U.S.C. § 6851(b)(3)(ii) and N.Y. C.L.S. Civ. R. §52-b, including a permanent injunction ordering Defendant to cease displaying and disclosing the visual depiction of Plaintiff and any other visual depictions of Plaintiff in his possession.

H.   Any other appropriate relief at law and equity that this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED 10/31/2023

New York, NY

<div style="margin-left:40%">

Respectfully submitted,

 /s/ Lindsay Lieberman
Lindsay Lieberman, NYSB #5020466
Lindsay Lieberman, LLC
lindsay@lindsaylieberman.com
P.O. Box 2575
Newport, RI 02840
Tel: (401) 314-0219


/s/ Allison Mahoney
Allison Mahoney, NYSB #5036504
ALM Law, LLC
43 West 43rd Street, Suite 309
New York, NY 10036
Tel.: (970) 315-5152
allison@almlawllc.com

</div>