

David Labkowski
david@labkowskilaw.com
(786) 461-1340

347 Fifth Avenue, Suite 1402
New York, NY 10016

1200 Brickell Avenue, Suite 800
Miami, FL 33131

April 7, 2026

*Via ECF*

Hon. Miroslav Lovric
United States Magistrate Judge
United States Courthouse
15 Henry Street
Binghamton, NY 13901

   Re: *Doe v. Rees*; Case No. 3:23-cv-01352-ECC-ML

Dear Judge Lovric:

  We are co-counsel to Plaintiff, Jane Doe ("Plaintiff"), in this action. We write in opposition to the letter, ECF 154, filed by Defendant, Jonathan Rees ("Defendant" or "Rees"), which seeks a conference regarding purported discovery issues, and an extension of the current discovery schedule. Plaintiff, addresses both, in turn, as authorized by ECF 156.

**A. Defendant's Second Set of Document Requests to Plaintiff**

  The subject of Defendant's letter, as it relates to document discovery, is Defendant's Second Request for the Production of Documents to Plaintiff, dated December 4, 2025 (the "Requests").[1] For completeness, however, and because Defendant did not, Plaintiff attaches a copy of the Requests. *See* Exhibit A.

  To begin, context matters. Defendant's Requests are far too broad: He seeks communications, often without subject-matter limitations, to or from Plaintiff and (by Plaintiff's count) at least 13 individuals, substantially untethered to the claims, the defenses or reasonable proportionality limits.[2]

  Notwithstanding that overbreadth, the undersigned engaged with Defendant's counsel and negotiated in good faith, agreeing to several compromises. Plaintiff has produced (and will continue to produce) many categories of information, even where relevance was attenuated or questionable. As to the Requests still at issue, the parties reached an impasse not because Plaintiff refused to engage, but because Defendant was unwilling to narrow his Requests to a reasonable scope. The remaining disputed Requests, therefore, continue to exceed what is permissible under the Rules, for the reasons set forth below for each request.

---

[1] Plaintiff agrees that the parties have engaged in multiple meet-and-confer discussions and have participated in good-faith negotiations concerning those requests.

[2] While certain requests include qualifiers, such as "concerning Defendant" or concerning the "claims or defenses," those limitations are illusory. In practice, the requests overwhelmingly seek wholesale communications, untethered to any constraints of proportionality or relevance. *See, e.g.*, Requests 7, 8, 9, 26, 28, 29, 30, and 31.

Hon. Miroslav Lovric
April 7, 2026
Page 2 of 7

1.    **Request 7: All documents and communications between You and April Chandler.**

Defendant's attempt to justify sweeping discovery into all communications between Plaintiff and April Chandler is unavailing. ECF 154 at 1-2.

To start, Defendant leans heavily on the fact that Ms. Chandler was identified in Plaintiff's First Supplemental Initial Disclosures as someone who *may* have relevant information. That, however, is not the barometer of discoverability. Initial disclosures are intentionally broad. *See* Rule 26(a)(1)(A)(i) (a party must disclose "the name and, if known, the address and telephone number of each individual likely to have *discoverable information*[]") (emphasis added). They do not open the door to wholesale discovery into every communication the disclosing party had with every disclosed individual.

Defendant next asserts that Ms. Chandler was "directly involved in events underlying Plaintiff's claims, including efforts related to Mr. Rees' efforts to obtain a restraining order against Plaintiff." *Id*. at 2. If that were true, the obvious avenue would be for Defendant to review and produce his own communications with Ms. Chandler, and/or to subpoena her. What Defendant cannot do is use that assertion as a pretext to demand, from Plaintiff, every communication between her and Ms. Chandler.

The remainder of Defendant's narrative lies even further afield. He claims that he had a later "falling out[,]" with Chandler, after which Ms. Chandler "engaged in extreme and hostile conduct toward him, including attempting to shoot him in New York, ultimately forcing him to flee and resulting in pending criminal charges against her." *Id*. That allegation, aside from being inflammatory, is irrelevant. Whatever relationship they had, which allegedly led Ms. Chandler to make an attempt on Defendant's life, has no bearing on Plaintiff's claims: Defendant admits that Ms. Chandler "had no relationship with Plaintiff until after her falling out with Mr. Rees, at which point she sought out Plaintiff." *Id*. This demonstrates that the communications occurred after Plaintiff's claims arose and therefore lack relevance.

Specifically, Plaintiff's claims concern the alleged disclosure of an intimate image (on October 11, 2022) and the initiation of proceedings without probable cause (approximately October 31, 2022, through March 3, 2023). Those claims arose months before Chandler's purported attack on Rees on August 8, 2023. *See* ECF 82 at 6. Notably, Ms. Chandler is nowhere mentioned in the operative complaint. Defendant's request is therefore untethered to any claim or defense, and serves only to digress into collateral matters.

Finally, Defendant invokes nebulous concepts or buzz words, such as "bias, motive, and potential coordination[,]" *id*., and plainly speculates that Plaintiff and Ms. Chandler may have "aligned themselves[,]" or "coordinat[ed,]" whatever that means. *Id*. These contentions, however, are not defenses to Plaintiff's claims. Either Defendant disclosed an intimate image without consent, or he did not. Either he initiated proceedings without probable cause that terminated in Plaintiff's favor, or he did not. Purported "alignment" or "coordination" provides no defense to those claims.

Defendant's attempt to frame this as a credibility issue fails. Plaintiff's communications with Ms. Chandler, occurring after the events at issue, do not bear on whether Plaintiff's

LABKOWSKI LAW

Hon. Miroslav Lovric
April 7, 2026
Page 3 of 7

allegations are true or false; they do not test Plaintiff's account of what occurred, nor do they contradict any element of her claims. At a minimum, this contention is superficial and conclusory.

> 2.   **Request 10: All documents and communications between You and David Greetham concerning Defendant or this Action.**

Defendant's position regarding David Greetham is misplaced and rests on a mischaracterization of both the facts and the law. Defendant begins by conceding that "Plaintiff has now identified David Greetham as an 'expert[,]'" ECF 154 at 2. Defendant, however, then flip-flops, and asserts without basis, that this designation and subsequent position are "not supportable" given that Mr. Greetham is "at minimum . . . a fact witness." *Id.*

According to Defendant, "Plaintiff does not contend that Mr. Greetham was retained by counsel[.]" ECF 154 at 2. That statement is flatly belied by the record. Plaintiff's counsel retained Greetham as an expert witness in digital forensics, and made the required disclosures pursuant to Rule 26(a)(2). Defendant's attempt to re-label Mr. Greetham as a "fact witness" is simply incorrect. There is no support for the suggestion that Greetham is anything other than what Plaintiff has identified him to be: a retained expert engaged to analyze digital forensic issues central to Plaintiff's claim for malicious prosecution.

Counsel, in communications with Defendant's counsel, identified Greetham as an expert witness. Greetham rendered a report setting forth his opinion on whether Rees altered certain emails that Rees later submitted to the Family Court in New York. Communications between Plaintiff's counsel (and Plaintiff working with counsel) and a retained expert—which defendant now seeks—fall squarely within the protections afforded to expert-related materials and are not subject to disclosure.

There are, in reality, two distinct buckets of communications at issue, neither of which supports Defendant's Request.

*First*, to the extent communications concern Plaintiff's malicious prosecution claim in this action, Plaintiff was copied alongside counsel. Those communications are therefore privileged and/or protected as attorney work product and expert-related materials. Notably, counsel for Plaintiff specifically asked Defendant to identify any authority suggesting that such communications are discoverable and not privileged. To date, Defendant has provided none and cites none in his letter to the Court.

*Second*, to the extent Plaintiff alone communicated directly with Mr. Greetham, those communications relate to Plaintiff's action against Defendant in the Northern District of Indiana, where Plaintiff obtained, first, the provisional remedy of attachment of Rees's house, and second, a final judgment against Rees under the Indiana version of the Uniform Fraudulent Transfers Act. The Indiana court recently denied Rees's motion to vacate that judgment. *See Jane Doe v. Jonathan Rees*, 2026 WL 763827 (N.D. Ind. March 18, 2026). Those communications relating to the Indiana action have no bearing on the claims or defenses for disclosure of the Intimate Visual Depiction or for malicious prosecution. Those communications, therefore, fall outside the scope of permissible discovery.

LABKOWSKI LAW

Hon. Miroslav Lovric
April 7, 2026
Page 4 of 7

> **3.      Request 12: All documents and communications between You and any investigator regarding Defendant.**

Defendant's request for "all documents and communications between [Plaintiff] and any investigator regarding Defendant" should be denied.  ECF 154 at 2-3.

Defendant claims that he makes this request in connection with a "welfare check" on him.  Defendant then leaps to assert that this somehow "bear[s] directly on [Plaintiff's] credibility," *id*. at 2, which is conclusory, entirely circular, and unexplained.[3]

Defendant claims he "has information to believe that Mr. Berman was involved in initiating a false welfare check on him, which resulted in police officers entering his home, and which formed the basis for Mr. Rees seeking a restraining order against Plaintiff, the latter of which is the basis for Plaintiff's claim for malicious prosecution."  *Id*.  That narrative is inaccurate and beside the point.  As shown by documents already produced in discovery, Mr. Berman acted after learning that Defendant had claimed he was going to commit suicide—statements Defendant communicated to Plaintiff's counsel in California (related to litigation in California)—and submitted a welfare check request on that basis.[4]

Defendant's leap from that episode to the conclusion that these materials are "directly relevant not only to Plaintiff's claims, but also to Defendant's defenses, including issues of fabrication" is a smokescreen, and again unexplained.  *Id*.  These communications have no bearing on Plaintiff's claims.

Defendant's perfunctory justification—that such materials are "highly relevant to the development of Plaintiff's claims, including what information was gathered[] [and] how it was obtained[]" is again entirely conclusory.  *Id*. at 2.  What bears on Plaintiff's claims, on credibility, and on the "accuracy of her allegations" is the evidence itself—the documents produced and the testimony to follow—not a wholesale excavation of every communication with an investigator.

Defendant further asserts that these materials "are not privileged."  *Id*.  But Plaintiff has not withheld those communications on privilege grounds.  The objection is more fundamental: the request is irrelevant, overbroad, and purely harassing.  Defendant seeks to rummage through communications untethered to any specific claim or defense, hoping something might turn up.  That is not a proper basis for discovery.

> **4.      Request 20: All documents and communication concerning a security guard you retained as a result of Defendant, and for which you are seeking damages in this Action.**

---

[3] The suggestion borders on disingenuous, given that Defendant himself fabricated evidence, conduct that earned him an indictment.  *See* ECF 90-1

[4] Indeed, a document reflecting the result of Defendant's FOIA request to the Chenango County Sheriff's Office confirms that Mr. Berman contacted the Sheriff's Office to request a welfare check after Defendant made statements suggesting he might harm himself.  That account is corroborated by the narrative police report supplement produced by Defendant in response to the FOIA request.  The corresponding document has already been produced in discovery by Defendant.

## LABKOWSKI LAW

Hon. Miroslav Lovric
April 7, 2026
Page 5 of 7

Defendant's argument as to Request 20 fares no better.

Defendant insists that discovery into the security guard is "particularly important" because it purportedly bears on causation and damages, and suggests that Plaintiff has "overstated her damages[.]" ECF 154 at 3. That premise collapses: Plaintiff already informed Defendant that she is not seeking, and does not intend to seek, damages related to expenses for a security guard. That representation renders Request 20 moot. The request, as drafted, is limited to documents concerning a security guard "for which you are seeking damages in this Action." Plaintiff is not.

Defendant's attempt to press forward anyway—on a theory that the materials might still be "important"—is an effort to expand its own request beyond its plain wording. Moreover, it is worth emphasizing that Plaintiff solely decided to forgo these damages as a step to avoid further harassment by Defendant. The production of information concerning security measures would only invite more of the same conduct alleged by Plaintiff.

**B.       Discovery Schedule**

Defendant's request for a four-month extension is not driven by necessity; it is the result of his own delay, and his counsel's litigation strategy and resource choices, for which Plaintiff should not bear the burden.

\*       \*       \*

On October 27, 2025, more than five months ago, Defendant's counsel appeared in this action. ECF 120. Since then, Defendant has had months to engage in discovery, including access to Plaintiff's initial disclosures—provided in 2024 and supplemented in late 2025—which identified individuals who may have relevant information. Instead, after defaulting and plainly ignoring the case for months, *see generally* ECF 138 at 5-7, Defendant's first substantive step was not to serve subpoenas, or pursue third-party discovery, or meaningfully participate in document exchange. Instead, it was to file a motion under Rule 10(a) seeking to strip Plaintiff of her pseudonym, a collateral issue, solely designed to harass her, another effort aimed at Plaintiff rather than the merits of this case. ECF 132. That motion came, furthermore, after Defendant had already violated at least 19 orders of this Court, defaulted, conveniently lied to the Court that he deactivated his email address to avoid a default judgment (*see* ECF 138 at 12-14, 138-2, 151) and brazenly lied about his assets (*see* ECF 138 at 12-14, *cf.* ECF 116 with ECF 138-3 and ECF 138-4).

Defendant then pushed past his original production deadline, strangely claiming he could not proceed with discovery here due to a pending motion involving Plaintiff in California. Solely to accommodate Defendant and to avoid further delay, Plaintiff agreed to adjourn that California motion until sometime after April. In other words, Defendant chose to spend his resources on harassment instead of doing the work he now claims requires four more months. The Court should reject that request.

Defendant's reliance on the purported number of "witnesses" is equally unavailing. He asserts that Plaintiff identified "41 individuals purportedly possessing discoverable information[,]" as though that number justifies a sweeping extension of time. It does not.

LABKOWSKI LAW

Hon. Miroslav Lovric
April 7, 2026
Page 6 of 7

Plaintiff complied with her disclosure obligations by identifying individuals who may have relevant information.  That is not an invitation to 41 "witness" depositions, nor does it entitle Defendant to embark on a fishing expedition under the guise of necessity.  *See e.g.*, Rule 30(a)(2)(A)(i) (leave of court required to conduct more than 10 depositions).

Similarly, Defendant's suggestion—albeit indirect—that he may need to depose Plaintiff more than once is equally unavailing and entirely premature.  There is no basis at this stage to assume that a second deposition will be necessary, and certainly none that would justify a four-month extension of discovery.  If such an issue materializes, with good cause, it can be addressed in the ordinary course.

As part of his request to extend the discovery schedule by four months, Defendant asserts that "Plaintiff has identified 17 treatment providers in connection with her claimed injuries but has not yet provided HIPAA authorizations, preventing Defendant from obtaining critical records necessary to evaluate Plaintiff's damages claims."  ECF 154 at 4.  That assertion is both misleading and overstated, and provides no basis to extend the schedule.

Plaintiff has already produced her medical records, after spending dozens of hours compiling them, with counsel reviewing and appropriately redacting sensitive personal information (including location-identifying details in light of an order of protection against Defendant).  She has also produced all receipts, for expenses for which she seeks damages. Defense counsel, nevertheless, recently asserted via email—without citation—that "[y]our client is required to execute these HIPAA releases."  Defendant provides no authority for that proposition, and none appears in the Local Rules or otherwise.

The notion that HIPAA releases are somehow "required," in addition to Plaintiff's production of her medical records, is unfounded.  Regardless, in an effort to compromise and avoid unnecessary litigation (such as this briefing), Plaintiff offered a reasonable compromise. She agreed to execute the HIPAA releases drafted by Defendant, on the condition that any materials obtained from those releases be designated Attorneys' Eyes Only pursuant to the Confidentiality Stipulation and Protective Order, ECF 27 (which expressly permits such designations for sensitive materials, including medical records).  Defendant refused.  Instead, defense counsel stated: "[w]e need to be able to discuss [Plaintiff's] alleged damages with our client."  That argument, however, misses the point.   The existing Protective Order, ECF 27 ¶ 11, only prohibits the *disclosure* of materials designated Attorneys' Eyes Only and does not prohibit defense counsel from *discussing* its contents with Defendant.  That satisfies the stated concern.[5]

Given the history between the parties, *see generally* ECF 64, the refusal to accept an Attorneys' Eyes Only designation raises obvious concerns.  This is precisely the type of sensitive material the Protective Order was designed to safeguard.  Defendant's position would strip those protections and create yet another avenue for harassment.

---

[5] In any event, and to quell any concerns Defendant may have, Plaintiff agrees—pursuant to a different clause of the Protective Order, ECF 27 ¶ 14 (permitting disclosure upon consent of the Producing Party)—that defense counsel may orally disclose to Defendant, or summarize for him, Plaintiff's medical expenses "necessary to evaluate Plaintiff's damages claims[.]"

LABKOWSKI LAW

Hon. Miroslav Lovric
April 7, 2026
Page 7 of 7

       The Court should decline Defendant's request.  Plaintiff suggests a two-month extension is reasonable under the circumstances.

*     *     *

       For these reasons, Plaintiff respectfully requests that the Court: (i) deny Defendant's motion to compel production of the documents and communications above; and (ii) extend the case schedule by two months.

Respectfully submitted,

/s/ David Labkowski
David Labkowski

cc:     Counsel of Record (via ECF)

LABKOWSKI LAW